**A.J. DeCOSTER, Appellant,**

v.

**FRANKLIN COUNTY, Iowa; E.R. Loebig, Franklin County Zoning Administrator; Jack Eno, Douglas Symens, William Hamilton, Donald Farrer, and James Van Hove, As Members of the Franklin County Board of Adjustment; William Jurgens, Edward Brass, and Verner Heilskov, Franklin County Board of Supervisors, Appellees.**

No. 91–1525.

Supreme Court of Iowa.

March 24, 1993.

As Corrected March 31, 1993.

G.A. Cady III of Hobson, Cady & Cady, Hampton, for appellant.

James M. Drew, County Atty., and Raymond P. Drew, Hampton, for appellees.

Eldon L. McAfee of Beving, Swanson & Forrest, P.C., Des Moines, for amicus curiae Iowa Pork Producers Ass'n.

Considered by LARSON, P.J., and SCHULTZ, LAVORATO, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This is a declaratory judgment action to determine whether the State, Franklin County, or both have jurisdiction to regulate the construction of a livestock waste storage basin. The district court held that concurrent jurisdiction applies. We reverse and remand.

Plaintiff, A.J. DeCoster, petitioned for a declaratory judgment to determine the regulations applicable to the construction of a livestock waste storage basin. DeCoster purchased approximately 160 acres of farm land located in rural Franklin County, an area presently zoned as "agricultural." On this land, he proposes to construct five hog finishing buildings. Each building will measure approximately 41 feet by 176 feet. The nearest building to a boundary line of the property will be constructed approximately 200 feet from the north boundary line of the property. The buildings to be constructed will house a total of approximately 920 head of hogs. In conjunction with the construction of the buildings, DeCoster proposed to construct a holding basin to be used for the collection and holding of sewage and waste generated from the confinement buildings. Each hog confinement building will contain a pit below the building for the gathering of animal urine and fecal matter. A pipeline would also be constructed between each building and the holding basin for transmitting waste. The waste material would be pumped or gravity fed from each building to the holding basin.

The ground for the holding basin would have to be engineered by DeCoster since it is not a naturally occurring formation on the land. The basin would be excavated by means of heavy equipment and would be constructed so that the side walls are not less than six feet in height. DeCoster proposes that all of the waste will be removed from the holding basin and applied to the farm land in accordance with applicable administrative rules of the Iowa Department of Natural Resources as well as any other applicable federal or state guidelines.

After construction of the buildings and the holding basin, DeCoster indicates that he will custom farm the remaining portion of the farm. The corn crop expected to be grown will be stored at a local grain elevator, ground there and returned to the farm for eventual feeding to the hogs. His crop expectations are such that he thinks he will be able to grow about ten percent of the total feeding requirements for the animals. DeCoster has also purchased another farm of 370 acres of which 335 acres are tillable. He intends to grow corn on this farm, producing twenty-five percent of the feed requirements for his animals.

Franklin County has adopted a zoning ordinance that provides restrictions upon the use of agricultural land. DeCoster's farms are presently zoned "A" agricultural district under the ordinance. Iowa Code section 358A.2 (1991) provides an exemption from the zoning ordinance for farm buildings or structures which "are primarily adapted, by reason of nature and area, for use as agricultural purposes."

DeCoster's declaratory judgment proceeding seeks to have a determination that his proposed use of the land for hog finishing purposes is exempt from the provisions of the Franklin County zoning ordinance. The trial court initially declared that the hog confinement buildings were exempt from the provisions of the Franklin County ordinance under the statutory exemption of section 358A.2. This portion of the declaratory judgment decree has not been appealed by either plaintiff or defendants. The

trial court also determined that the proposed waste storage basin constituted a "private sewage treatment system" which was specifically subject to the provisions of the Franklin County zoning ordinance. As such, a zoning permit was required to be obtained after a county health officer had conducted a site evaluation and given preliminary approval to the proposed sewage system.

DeCoster then filed a motion to amend and modify the findings by the court pursuant to Iowa Rule of Civil Procedure 179(b). The court requested additional facts and a supplemental stipulation was submitted setting out DeCoster's plan regarding the waste storage basin. Thereafter, the court determined that DeCoster's proposed waste storage basin was subject to regulation by the Franklin County board of health pursuant to Iowa Code section 455B.172. DeCoster's motion pursuant to rule 179(b) was denied.

■ This declaratory judgment action was denominated an equity case and tried to the court on stipulated facts. The court's decision was styled a "decree." Under Iowa Rule of Civil Procedure 267, declaratory judgment actions are reviewed as any other judgment. When the case is tried in equity, our review is de novo. The parties do not argue otherwise. We conclude the action was tried in equity and thus should be reviewed de novo by this court. *Citizens Sav. Bank v. Sac City State Bank*, 315 N.W.2d 20, 24 (Iowa 1982); *cf. Matter of Mount Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988); *Mead v. Iowa State Bd. of Parole*, 331 N.W.2d 102, 103 (Iowa 1983).

The challenge to the trial court's decree seeks to avoid regulation by Franklin County under its zoning ordinance by invoking either a statutory exception or an exception under the county ordinance itself. Defendants, Franklin County and its officials, do not seek exclusive authority to regulate animal waste storage lagoons but argue that no preemption of regulation by the state has occurred.

Franklin County promulgated its zoning ordinance by virtue of the general powers given it under chapter 358A styled "County Zoning Commission." No question is raised as to the legality of the ordinance; only its applicability is attacked.

The statutory provision that provides an exception to county zoning regulation is section 358A.2. That section provides:

358A.2 Farms exempt.

Except to the extent required to implement section 358A.27, no ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings, or other buildings or structures which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used. However, the ordinances may apply to any structure, building, dam, obstruction, deposit or excavation in or on the flood plains of any river or stream.

Franklin County ordinance number 358A.503 follows the wording exactly of section 358A.2 as to what is exempt.

The frontal assault by plaintiff against county regulations asserts a total exemption under section 358A.2 and its corollary, Franklin County ordinance 358A.503. The exemption must come, if at all, through the language that exempts from county regulation "structures which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used." The second sentence in section 358A.2 has no application in this case since there is no flood plain involved. Plaintiff asserts that the waste storage basin is a structure that is an integral part of the hog finishing activity that has an agricultural purpose. Reliance is placed on our decision in *Farmegg Products, Inc. v. Humboldt County*, 190 N.W.2d 454 (Iowa 1971).

In *Farmegg*, we held that large chicken houses containing 40,000 chicks were not exempt from county zoning under section 358A.2 because they did not meet the test of use "for agricultural purposes." The test adopted distinguished between activity carried on as part of an agricultural function or is separately organized as an independent productive activity. *Id.* at 458–59. *Farmegg* pointed out its different factual situation from a Pennsylvania case qualify-

ing for the exemption where a turkey farm was operated in conjunction with ordinary farming operations. Plaintiff argues that the waste storage basin has no use separate from the hog confinement operation and therefore meets the test for the exemption as an agricultural purpose, just as do the confinement buildings themselves.

Plaintiff also relies on *Reid v. Iowa State Commerce Commission,* 357 N.W.2d 588 (Iowa 1984), where an electric utility proposed to construct a generating plant. The utility also proposed to construct a landfill for solid coal waste generated by the plant at a location several miles from the main plant. Our court ruled that the landfill was an essential component of the generating facility and was therefore exempt from compliance with the local zoning ordinance. *Id.* at 590–91. The fact that the landfill was located separately from the generating plant did not defeat the exemption. Regulating authority was provided by Iowa Code chapter 476A (1983) to the Iowa State Commerce Commission which thereby superseded the provisions of chapter 358A granting authority to counties.

Franklin County also quotes the language of *Farmegg* to show that reasonable zoning restrictions by counties are contemplated by the legislature and enforced by court interpretation. It argues that the storage lagoon is not agricultural within the meaning of section 358A.2 but is a collection site for waste no different from operations that collect waste of humans, zoo animals, or animals in commercial packing houses.

The trial court believed that resolution of these competing interpretations is found in the language of chapter 455B, granting jurisdiction of various supervising duties to the department of natural resources and local boards. It referred to section 455B.172 which states:

455B.172 Jurisdiction of department and local boards.

. . . .

3. Each county board of health shall adopt standards for private water supplies and private sewage disposal facilities. These standards shall be at least as stringent but consistent with the standards adopted by the commission. If a county board of health has not adopted standards for private water supplies and private sewage disposal facilities, the standards adopted by the commission shall be applied and enforced within the county by the county board of health.

4. Each county board of health shall regulate the private water supply and private sewage disposal facilities located within the county board's jurisdiction, including the enforcement of standards adopted pursuant to this section.

5. The department shall maintain jurisdiction over and regulate the direct discharge to a water of the State. The department shall retain concurrent authority to enforce state standards for private water supply and private sewage disposal facilities within a county, and exercise departmental authority if the county board of health fails to fulfill board responsibilities pursuant to this section.

The department shall by rule adopt standards for the commercial cleaning of private sewage disposal facilities, including but not limited to septic tanks and pits used to collect waste and livestock confinement structures, and for the disposal of waste from the facilities. The standard shall not be in conflict with the state building code. A person shall not commercially clean such facilities or dispose of waste from such facilities unless the person has been issued a license by the department. The department shall be exclusively responsible for adopting the standards and issuing licenses. However, county boards of health shall enforce the standards and licensing requirements established by the department. Application for the license shall be made in the manner provided by the department.

The court found the use of the phrase "private sewage disposal facilities" to be synonymous with the phrase "private sewage disposal system" as used in the definition of words used in the chapter, section 455B.171(22) (1991). From this, the court

found that concurrent jurisdiction was conferred upon the department of natural resources and local county boards of health for purposes of adopting and enforcing standards relating the livestock waste holding basins.

The difficulty in this analysis arises from the definition in section 455B.171(22) itself. The definition refers to "domestic sewage," "dwelling units," and "individuals." The word "domestic" is a term having to do with the home or housekeeping. *See* Black's Law Dictionary 484 (6th ed. 1990) (defining "domestic" as "[p]ertaining, belonging, or relating to a home"). The other words are focused on humans rather than animals. As such, the definition of "private sewage disposal system" refers to sewage systems for humans, not livestock disposal systems. There is no indication in this definition that the legislature intended concurrent authority to be conferred by this language on the department of natural resources and counties.

Section 455B.172 does confer jurisdiction on the department of natural resources to adopt standards for the commercial cleaning of pits used to collect waste in livestock confinement structures and for the disposal of waste from the facilities. The department is exclusively responsible for adopting the standards and issuing licenses. County boards of health are empowered to enforce the standards and licensing requirements established by the departments. Nothing in this section, however, confers jurisdiction on the county to regulate the construction of livestock waste holding basins.

Recently, we considered whether a large grain storage facility was subject to a county zoning ordinance or was exempt from county regulation by virtue of section 358A.2. *Helmke v. Board of Adjustment*, 418 N.W.2d 346 (Iowa 1988). In *Helmke*, we held the exemption applied, reasoning that the storage facility was not an independent productive activity as in *Farmegg*, but was "part of the agricultural function." *Id.* 418 N.W.2d at 352. We believe the storage and disposal of hog waste from a holding basin is even more clearly a part of the agricultural function.

In *Reid*, 357 N.W.2d at 591, we said: Finally, we do not believe petitioners' interpretation of the statute is practical or workable. Local authorities could deprive the utility of an essential component of its operations by using the zoning power. This would give local authorities veto power over the operation of a generating plant.

We find this logic applicable to the present case. It would be somewhat incongruous to exempt hog confinement buildings from county regulation and at the same time subject the waste storage basin adjoining those buildings to county regulation. We do not find any legislative intent supporting such a result.

The trial court erred in not finding the waste storage basin exempt from county ordinance regulation under the authority of section 358A.2. Because of this result, there is no need to discuss the issues of exemption raised under the language of the county ordinances. We reverse and remand for entry of judgment, sustaining plaintiff's rule 179(b) motion in accordance with this opinion. Judgment shall be entered declaring the construction of plaintiff's proposed waste storage basin is exempt under section 358A.2 from regulation by Franklin County's zoning ordinance.

**REVERSED AND REMANDED.**