Carol J. **KRAMER**, as Trustee of the Carol J. Kramer Revocable Trust dated December 12, 2001, Allan Kramer, Individually, and Sioux Pharm, Inc., an Iowa Corporation, Plaintiffs–Appellants,

v.

**BOARD OF ADJUSTMENT FOR SIOUX COUNTY, Iowa, Board of Supervisors for Sioux County, Iowa, and Shane A. Walter, Defendants–Appellees.**

No. 10–0058.

Court of Appeals of Iowa.

Nov. 24, 2010.

James E. Nervig of Brick Gentry P.C.,
West Des Moines, and Daniel J. Mouw of
Oostra, Bierma & Van Engen, P.L.C.,
Sioux Center, for appellants.

Jeff W. Wright of Heidman Law Firm,
L.L.P., Sioux City, and Coleman J. McAl-
lister, Sioux County Attorney, Orange
City, for appellees.

Heard by MANSFIELD, P.J., and
DANILSON and TABOR, JJ.

DANILSON, J.

Plaintiffs Carol J. Kramer, as trustee of
her revocable trust, Allan Kramer, and
Sioux Pharm, Inc. (collectively Sioux
Pharm), sought to establish that Sioux
Pharm's wastewater storage lagoon in
Sioux County was exempt from county

zoning regulations. The Sioux County Board of Adjustment disagreed, and the district court granted summary judgment in favor of the defendants. On appeal, Sioux Pharm argues that these decisions represent an erroneous interpretation of Iowa Code section 335.2 (2007). The defendants, who are the county board of adjustment, the county zoning administrator, and the county board of supervisors (collectively "the Board"), disagree and urge that the district court's interpretation of section 335.2 was correct. We agree with the district court that there is no genuine issue of material fact and that the wastewater storage lagoon is subject to Sioux County zoning regulation because it is not primarily adapted for use for agricultural purposes. The judgment of the district court is affirmed.

## I. Background Facts and Proceedings.

Plaintiff Sioux Pharm, Inc.[1] is an Iowa corporation that manufactures chondroitin sulfate through an extraction process using cow tracheas, pig and chicken parts, and corn. This process produces 15,000 to 18,000 gallons of industrial wastewater daily at Sioux Pharm's manufacturing facility located in Sioux Center.[2] The wastewater is described as a "filtered food-grade bovine protein solution." Sioux Center will not accept the wastewater into its municipal treatment facility. In 2003, Sioux Pharm began construction, without prior approval from Sioux County or the Iowa Department of Natural Resources (DNR),

of an earthen wastewater storage lagoon located on farmland in rural Sioux County owned by plaintiff Carol J. Kramer, as trustee of her revocable trust.

In April 2004, the DNR approved the wastewater storage lagoon as built, and issued Sioux Pharm an operation permit, but stated that "any product going to the proposed lagoon is truly waste." The lagoon is an uncovered earthen pit that holds a total of 859,000 gallons of the "high-strength organic" wastewater that plaintiff Dr. Allan Kramer purchases from Sioux Pharm. Since 2004, Sioux Pharm has trucked its wastewater to the storage lagoon. The wastewater contains nutrients that have some benefit to crops. Dr. Kramer farms the land owned by the Carol J. Kramer trust, and he periodically applies wastewater to nine application sites at the rate the DNR authorizes. Although Sioux Pharm has a commercial fertilizer manufacturer/dealer license, it is not authorized to sell wastewater after it has been stored in the lagoon, as once the wastewater is placed into the lagoon it becomes contaminated with bacteria.

The unincorporated areas of Sioux County are subject to a county zoning ordinance that was adopted in 1979.[3] The lagoon is located in an unincorporated area zoned for agricultural use. According to Article 5, Section (4.16) of the zoning ordinance, "treatment facilities in an Agricultural District require a Special Exception Use permit." Although the DNR approved both Sioux Pharm's construction (after the fact) and use of the lagoon, Sioux

1. Plaintiff Dr. Allan Kramer is the president and authorized agent of Sioux Pharm, Inc. For purposes of simplicity, we will use "Sioux Pharm" to reference the plaintiffs collectively, unless specifically stated otherwise.

2. Iowa Code section 455B.171(9) defines "industrial waste" as "any liquid, gaseous, radioactive, or solid waste substance resulting from any process of industry, manufacturing, trade,

or business or from the development of any natural resource."

3. On August 19, 2008, the 1979 zoning ordinance was superseded by the 2008 zoning ordinance. Any differences between the ordinances are not relevant for purposes of our review.

Pharm had not obtained a special exception use permit from Sioux County Board of Adjustment.

Upon receipt of multiple complaints about the lagoon and the odor emitting from it, Sioux County Zoning Administrator Shane Walter determined that the lagoon was being operated without a special use permit. In January and March 2008, Walter provided Sioux Pharm with written notices that its construction and use of the lagoon was in violation of the zoning ordinance. Sioux Pharm met with the Sioux County Planning and Zoning Commission at its April 17, 2008 meeting. Sioux Pharm stated the wastewater stored in the lagoon was a "filtered food-grade bovine protein solution." After the meeting, Sioux Pharm applied for a permit for a "non-farm" use involving "industrial wastewater."

In August 2008, the Board granted Sioux Pharm a temporary special exception use permit "for construction of an earthen wastewater lagoon used for storage of industrial wastewater from the Sioux Pharm plant in Sioux Center, Iowa." The temporary permit was subject to the following conditions:

1. Sioux Pharm will be required to place a no-access chainlink fence on the South, East, and West side of the lagoon, in addition to a steel barrier rail on the North side of the lagoon. The fence and the barrier are to be completed by September 15, 2008.

2. The odor must be reduced by 50% or more by June 1, 2009.

3. Full compliance with DNR is required. Failure to maintain full compliance will render the Special Exception Use Permit null and void.

4. This *temporary* Special Exception Use Permit expires June 1, 2009 at which time the application will be re-viewed for extension or expiration by the Board of Adjustment.

The Board reviewed the recommendations of the Planning and Zoning Commission in regard to the status of the temporary permit at its May 27, 2009 meeting. The Board determined Sioux Pharm had failed to meet the conditions imposed by the temporary permit and declined to extend the permit. The temporary permit expired on June 1, 2009. Sioux Pharm continued to transport wastewater to the lagoon daily, despite the expiration of the temporary permit.

On June 1, 2009, Sioux Pharm filed a multi-count petition seeking a writ of certiorari, declaratory relief, and injunctive relief. All counts were premised upon establishing that the use of the wastewater storage lagoon served an agricultural purpose and was exempt from Sioux County zoning regulations. Both parties filed motions for summary judgment. The parties agreed the issue should be resolved as a matter of law. On December 1, 2009, after a hearing on the motions, the district court entered judgment in favor of the Board, concluding substantial evidence supported the Board's finding that Sioux Pharm's storage lagoon was not primarily adapted for use for agricultural purposes and was therefore subject to Sioux County zoning regulations. Sioux Pharm filed a motion to amend or enlarge the ruling, but the court reaffirmed its prior ruling. Sioux Pharm now appeals.

**II. Standard of Review.**

This case comes to us from the district court's summary judgment ruling on Sioux Pharm's petition for writ of certiorari, declaratory relief, and injunctive relief. We review a ruling on a motion for summary judgment for correction of errors at law. *City of Johnston v. Christenson*, 718 N.W.2d 290, 296 (Iowa 2006).

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3).

### III. Agricultural Use.

 The question before us is a matter of statutory interpretation. Iowa Code chapter 335 establishes general zoning authority for counties, the scope of such authority, and the procedures for exercising that authority. *See* Iowa Code §§ 335.1, 335.3; *Goodell v. Humboldt County*, 575 N.W.2d 486, 494 (Iowa 1998). One limitation on the county's zoning power is the express preemption of county zoning of agricultural land and structures under section 335.2:

> [N]o ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings *or other buildings or structures which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used.*

Iowa Code § 335.2 (emphasis added). Section 335.2 was "intended as a protection for the farmer and his investment in his land." *Goodell*, 575 N.W.2d at 494 (citing H.F. 426, 1947 H.J. 587 (comments and explanation); Note, *County Zoning in Iowa*, 45 Iowa L.Rev. 743, 754 (1960); Neil D. Hamilton, *Freedom to Farm! Understanding the Agricultural Exemption to County Zoning in Iowa*, 31 Drake L.Rev. 565, 574 (1981–82) ("the exemption of section 358A.2 [now section 335.2] was a significant statement of the 'freedom to farm'")).

In this case, the district court determined that the wastewater lagoon was built by Sioux Pharm, Inc., a pharmaceutical manufacturer, and not the landowner, Carol J. Kramer, as trustee of her revocable trust, or Dr. Allan Kramer, who farms the land. The court further noted that Sioux Pharm, Inc. is not in the business of storing or selling fertilizers or soil containers, or of raising crops or livestock. As the court stated:

> The case before the Court involves the storage of industrial wastewater by a non-agricultural manufacturer. The primary purpose of the lagoon is to support a manufacturing process, not agricultural. The lagoon serves as a substitute for a wastewater treatment facility and is not part of the agricultural function.

The court therefore concluded the storage lagoon was subject to Sioux County zoning regulations.

On appeal, Sioux Pharm contends the district court erred in determining its wastewater storage lagoon was not primarily adapted for use for agricultural purposes, because the lagoon's "only use is for storage of wastewater that is used as fertilizer for the cultivation of crops as part of the farming operation" conducted by Dr. Allan Kramer on the farm on which the lagoon is located.[4] Specifically, Sioux Pharm alleges "[t]he design, adaptation and actual use" of the lagoon "is for the sole purpose of storage of high-strength organic wastewater until such time as it is removed and applied as fertilizer."

---

4. Iowa Code section 200.3(10) defines "fertilizer" as:

> [A]ny substance containing one or more recognized plant nutrient which is used for its plant nutrient content and which is designed for use and claimed to have value in promoting plant growth except unmanipulated animal and vegetable manures or calcium and magnesium carbonate materials used primarily for correcting soil acidity.

The Board disagrees, and argues that "[t]he functional aspect of the lagoon is to store industrial wastewater until it can be disposed of by land application." The Board reasons that Sioux Pharm does not have a place to dispose of its industrial wastewater because the City of Sioux Center will not accept it; Sioux Pharm did not construct its own treatment facility at its manufacturing location; and Sioux Pharm's "use of the industrial wastewater as fertilizer is merely incidental to the real purpose for the storage lagoon." The Board also notes that the wastewater has never been approved as a "fertilizer" by the Iowa Secretary of Agriculture as required by the Iowa Department of Agriculture regulations.[5]

In determining what constitutes "agricultural purposes" within the scope of the section 335.2 exemption, our supreme court has relied upon a definitional test[6] to determine if the exemption is applicable: "agriculture is the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock." *Thompson v. Hancock County,* 539 N.W.2d 181, 183 (Iowa 1995) (citing *Farmegg Prods., Inc. v. Humboldt County,* 190 N.W.2d 454, 457–58 (Iowa 1971)). In addition to land, "the exemption extends to facilities to be used in connection with agricultural functions." *Id.* (citing *DeCoster v. Franklin County,* 497 N.W.2d 849, 853 (Iowa 1993) (livestock waste stations being used in connection with hog finishing facilities held exempt)); *Helmke v. Bd. of Adjustment,* 418 N.W.2d 346, 351–52 (Iowa 1988) (co-op's off-site grain storage facility held exempt). Our supreme court most recently analyzed the section 335.2 exemption in 1996, and stated:

> We believe that a fair reading of the words "for use for agricultural purposes" read in the context of the act refers to the functional aspects of buildings and other structures, existing or proposed. The qualifying words "primarily adapted by reason of nature and area" also refer to the proposed structures and the site on which they are located.

*Kuehl v. Cass County,* 555 N.W.2d 686, 688 (Iowa 1996). Qualification for the exemption must be based on a factual analysis of the use of the land or structure. *See* Hamilton, *Freedom to Farm!,* 31 Drake L.Rev. at 567.

■ We agree with Sioux Pharm that the facts in the instant case have similarities to the facts in *DeCoster,* 497 N.W.2d at 849–51. In *DeCoster,* the plaintiff sought to construct a livestock waste storage basin in conjunction with the construction of a multi-structure hog confinement facility in Franklin County. *Id.* at 849. The plaintiff planned to custom farm the remaining portion of the farm on which the waste storage basin was located. *Id.* The plaintiff proposed that all the waste would be removed from the basin and applied to the farmland in accordance with DNR guidelines. *Id.*

The supreme court determined "the storage and disposal of hog waste from a holding basin is . . . clearly a part of the agricultural function." *Id.* at 853. The court reasoned, "It would be somewhat incongruous to exempt hog confinement buildings from county regulation and at

---

5. *See* Iowa Code chapter 200; Iowa Admin. Code r. 21–43.1 et seq.

6. Some states have an expansive list of activities that qualify as "agriculture"; some states (including Iowa) use a general definition of "agricultural land use"; and other states apply a hybrid of the two tests. Courtney Jayde Barnes, *Agricultural Zoning Exemptions: Cultivating Chaos in the Twenty–First Century?,* 13 Drake J. Agric. L. 245, 248–52 (2008).

the same time subject the waste storage basin adjoining those buildings to county regulation." *Id.; see also Helmke,* 418 N.W.2d at 352. In essence, the court found that a storage basin constructed for onsite handling of waste created by an agricultural activity was an integral part of the agricultural function that qualified for a section 335.2 exemption. *See DeCoster,* 497 N.W.2d at 853. The important factual difference between the facts of the instant case and the facts the supreme court analyzed in *DeCoster* is the source of the waste to be contained in the storage structure, and the purpose for which the structure was constructed. These distinctions are fatal to Sioux Pharm's claim.

In *DeCoster,* the storage basin was constructed to store the waste that was the by-product of the livestock raised in hog confinement facilities located on the plaintiff's farm. In this case, the lagoon was constructed to store the wastewater that is the by-product of Sioux Pharm's industrial manufacturing facility located in Sioux Center. Sioux Pharm manufactures chondroitin sulfate for pharmaceutical purposes, a process that produces 15,000 to 18,000 gallons of wastewater daily. Because the City of Sioux Center will not accept the wastewater at its treatment facility, Sioux Pharm transports the wastewater to the lagoon. Although the wastewater is eventually used to fertilize the land farmed by Dr. Kramer, the fact remains that the primary purpose and functional aspect of the lagoon is to store Sioux Pharm's industrial wastewater. Further, as observed by the district court:

> The storage lagoon was built by Sioux Pharm, Inc., not the landowner. Sioux Pharm, Inc. is a manufacturer who is not involved in agriculture. Even though Sioux Pharm, Inc. calls its wastewater "fertilizer," it has never registered the wastewater as a fertilizer or soil conditioner with the Iowa Department of Agriculture and has not complied with regulations for the storage of liquid fertilizer. It has obtained a fertilizer license but is not in the business of storing or selling fertilizers or soil conditioners. It is not in the business of raising crops or livestock. Sioux Pharm, Inc., is a pharmaceutical manufacturer.

We acknowledge Sioux Pharm's efforts to find a beneficial reuse for its industrial wastewater. In this regard, one commentator has noted:

> During the last quarter-century, wastewater from homes, businesses, and industries has undergone a dramatic transformation from a little-appreciated and under-utilized resource to an increasingly valuable water source. Until the 1970s, municipal wastewater (known as effluent or reclaimed water in its treated form) was generally discharged into waterways after undergoing modest treatment at wastewater treatment plants.... Stricter water quality standards, improved treatment technology, and growing demand for water have led to an upsurge in the reuse of wastewater to meet a variety of municipal, residential, agricultural, commercial, and environmental needs.

Ginette Chapman, *From Toilet to Tap: The Growing Use of Reclaimed Water and the Legal System's Response,* 47 Ariz. L.Rev. 773, 773 (2005). However, unless the legislature amends Iowa Code section 335.2 to expand the limitation on county zoning to include wastewater reuse facilities, we decline such a broad interpretation.

In sum, the lagoon does not serve to store a product of agriculture (such as a grain facility), or a by-product of agriculture (such as a livestock waste lagoon). The wastewater transported by Sioux

Pharm is a by-product of an industrial process, not an agricultural process. Sioux Pharm is not in the business of farming. Although the wastewater may have some fortuitous benefit to crop enhancement, and incidentally serves as a crop input, it has never been approved as a fertilizer by the Iowa Secretary of Agriculture and cannot be sold as a fertilizer once the wastewater is stored in the lagoon. Thus, we conclude the wastewater storage repository or lagoon cannot be found to be primarily adapted for use for agricultural purposes, as required for exemption under section 335.2. *See, e.g., Kuehl,* 555 N.W.2d at 688–89; *DeCoster,* 497 N.W.2d at 853; *Helmke,* 418 N.W.2d at 352.

## IV. Grandfathered Nonconforming Use.

■ Sioux Pharm also alleges the district court erred in failing to find that Sioux Pharm's use of the storage lagoon was a grandfathered nonconforming use pursuant to Article XXII, Section 22.2 of the 2008 zoning ordinance (providing for the grandfathering of lawful uses of land under the 1979 zoning ordinance that do not conform to the new regulations of the 2008 zoning ordinance). The Board argues that this issue has not been preserved for our review on appeal.

■ "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002). When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a rul-

ing on that issue in order to preserve error for appeal. *Id.* at 537; *Benavides v. J.C. Penney Life Ins. Co.,* 539 N.W.2d 352, 356 (Iowa 1995); *State Farm Mut. Auto. Ins. Co. v. Pflibsen,* 350 N.W.2d 202, 206 (Iowa 1984). "It is not a sensible exercise of appellate review to analyze facts of an issue without the benefit of a full record or lower court determination." *Meier,* 641 N.W.2d at 537. Here, the court did not address or rule on the grandfathered nonconforming use issue raised by Sioux Pharm, and Sioux Pharm did not request a ruling on this unresolved issue by a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) or otherwise. Accordingly, the district court was not given an opportunity to address its failure to rule on the issue either by making a ruling or refusing to do so. *See id.* at 539. We find Sioux Pharm has failed to preserve error on this issue.[7]

## V. Conclusion.

Upon our review, we agree with the district court that no genuine issue of material fact exists and there is substantial support in the record that Sioux Pharm's wastewater storage lagoon is subject to the Sioux County zoning regulations. Sioux Pharm's argument for an agricultural exemption on the basis that the lagoon's sole purpose is for the storage of wastewater until it can be used as fertilizer ignores the lagoon's actual and, more importantly, primary purpose. Even assuming the wastewater does have some benefit to crops upon the farmland where the lagoon is located, this does not negate the fact that the *primary purpose* for the lagoon is for the *storage* of the wastewater created by Sioux Pharm's manufacturing facility. Because it does not qualify for an agricul-

---

7. Even assuming, *arguendo,* that Sioux Pharm had properly preserved error on this issue, we find the argument is without merit. A grandfathered nonconforming use under the 2008 zoning ordinance is predicated on a conform-

ing use under the preexisting 1979 zoning ordinance. However, in early 2008, Sioux Pharm's use of the storage lagoon was found to be in violation of 1979 zoning ordinance then in effect.

tural exemption under section 335.2, Sioux Pharm's storage lagoon is subject to Sioux County zoning regulations. We therefore affirm the district court's entry of summary judgment in favor of the Board.

**AFFIRMED.**