David R. THOMPSON and Holly
L. Thompson, Appellees,

v.

HANCOCK COUNTY, Iowa; Cliff Smith, Hancock County Zoning Administrator; Calvin Kurtzleben, Willis Davison, Dean Trenary, Duane Pringnitz, and Donald Dallman, As Members of the Hancock County Board of Adjustment; and John M. Torkelson, Richard J. Gourley, and Robert Reibsamen, Hancock County Board of Supervisors, Appellants.

No. 94–692.

Supreme Court of Iowa.

Oct. 25, 1995.

Barry J. Nadler of Newbrough, Johnston, Brewer, Maddux & Nadler, Ames, and Ted Hovda, County Attorney, for appellants.

James A. Pugh and Lori K. Geadelmann of Morain, Burlingame, Pugh & Koop, West Des Moines, for appellees.

Eldon L. McAfee of Beving, Swanson & Forrest, P.C., Des Moines, for amicus curiae Iowa Pork Producers Association.

Christina L. Gault, West Des Moines, for amicus curiae Iowa Farm Bureau Federation.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and TERNUS, JJ.

CARTER, Justice.

Hancock County, its zoning officials, and members of its board of supervisors appeal from a declaratory judgment exempting hog confinement facilities owned and operated by plaintiffs, David R. Thompson and Holly L. Thompson, from compliance with county zoning ordinances. The district court concluded that the facilities in question were exempt from zoning restrictions pursuant to the provisions of Iowa Code section 335.2 (1995). Appellants challenge that conclusion and, in the alternative, assert that the exemption provided in section 335.2 is a general statute superseded in the present circumstances by the specific requirements of Iowa Code section 172D.4(1) (1995), which provides "[a] person who operates a feedlot shall comply with applicable zoning requirements." After reviewing the record and considering the arguments of the parties, we affirm the judgment of the district court.

Plaintiffs, David R. and Holly L. Thompson, have been farming in Hancock County since 1973. They own a forty-acre tract of land, which is referred to as the "home place," and they additionally lease 577 acres of land. They farm both a portion of the "home place" and all of the leased land. The grain produced by the Thompsons is stored both on the "home place" and at a local grain bank. In addition to their farming activities, the Thompsons also operate a farrow-to-finish hog operation that is located on the "home place." This operation consists of 220 to 250 sows, which in turn produce approximately 4180 to 5000 hogs per year.

At the center of this controversy is the Thompson's proposed construction of a hog confinement facility, which would consist of five hog confinement buildings. This proposed facility would also be located on the "home place," and each building would be about forty-one feet by 180 feet and each would be designed to accommodate 900 feeder pigs. The feeder pigs would remain at the Thompson's facility until they reach market weight. A contract was entered into between the Thompsons and Land O'Lakes pursuant to which, Land O'Lakes is to provide the Thompsons with the feeder pigs for this operation. Land O'Lakes will own the pigs, and the Thompsons will be paid a fee for their services. This contract is to expire in June 2003, at which time the Thompsons are free to use the facility for their own hogs.

The proposed hog confinement facility does not qualify for construction under existing county zoning ordinances. The board of supervisors refused to recognize that the facility fell within the agricultural purposes exemption. After a district court had determined that the board of adjustment had no authority to intervene in the supervisors' decision, this declaratory judgment action was initiated in which the Thompsons prevailed on their exemption claim. We separately consider on this appeal issues presented by the county and its officials concerning (1) the county's authority to zone, (2) the agricultural exemption contained in section 335.2, and (3) the effect of section 172D.4(1) on the section 335.2 exemption.

## I. *The County's Authority to Zone.*

■ At the outset, we consider the claim of the hog producers that the county lacks power to adopt zoning ordinances affecting livestock operations. That claim is predicated on the final sentence in Iowa Code section 172D.1(15), which states: "Nothing in this chapter shall be deemed to empower any agency described in this section to make any regulation or ordinance." The statute in which this sentence is contained refers to zoning requirements and the agencies identified therein include cities and counties. Notwithstanding the hog producers' argument to the contrary, we do not believe that the quoted language in any way restricts the power of counties to enact zoning regulations under the general authority contained in Iowa Code chapter 331. Ordinances enacted pursuant to this authority, however, may be subject to applicable exemptions found elsewhere in the Code.

## II. *The Section 335.2 Agricultural Exemption.*

■ An agricultural purpose exemption is contained in Iowa Code section 335.2. That statute provides:

Except to the extent required to implement section 335.27, no ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings or other buildings or structures which are primarily adapted, by reason of nature and area, *for use for agricultural purposes,* while so used. However, the ordinances may apply to any structure, building, dam, obstruction, deposit or excavation in or on the flood plains of any river or stream.

Iowa Code § 335.2 (1995) (emphasis added). This exemption has been incorporated into zoning regulations enacted under chapter 331 by language contained in section 331.304(6). In determining what are agricultural purposes within the scope of this exemption, we have concluded that agriculture is the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock. *Farmegg Prods., Inc. v. Humboldt County,* 190 N.W.2d 454, 457–58 (Iowa 1971). Using this definition, we have held that the exemption extends to facilities to be used in connection with agricultural functions. *DeCoster v. Franklin County,* 497 N.W.2d 849, 853 (Iowa 1993) (livestock waste stations being used in connection with hog finishing facilities held exempt).

■ The Thompsons have been farming some portion of the land that they currently own or lease for the past twenty years. They have other types of livestock in addition to the hogs. They do, and will continue to, raise crops on the land, some of which will be used as feed for the hogs. They own and operate machinery for the planting and harvesting of crops and for the spreading of manure. Their farming operation contains grain storage facilities capable of holding 16,000 bushels of grain. The proposed hog operation is an expansion of the livestock operations that have been carried on by the Thompsons for several years. We are convinced that the challenged hog confinement facilities are part of the evolving agricultural functions associated with a particular farming operation. As such, these facilities enjoy the exemption from county zoning ordinances provided in section 335.2.

## III. *The Effect of Section 172D.4(1) on the Section 335.2 Exemption.*

Section 172D.4(1) provides:

A person who operates a feedlot shall comply with applicable zoning requirements. The applicability of a zoning requirement shall be as provided in subsection 2 of this section. A person complies with this section as a matter of law where no zoning requirement exists.

This statute was enacted as 1976 Iowa Acts chapter 1121, section 4, effective November 1, 1976. The provisions of section 335.2 at issue here were first enacted in 1947. Appellants urge that because section 172D.4(1) is specific as to feedlots and was enacted after the agricultural exemption of section 335.2 it supersedes and overrides that general exemption statute. Although we find that argument to be persuasive, it does not avail the appellants of much unless the proposed hog confinement facilities in the present case meet the definition of feedlot as used in section 172D.4(1). The definition of "feedlot" for purposes of section 172D.4(1) is contained

in section 172D.1(6). That statute defines "feedlot" as "a lot, yard, corral or other area in which livestock are confined, primarily for purposes of feeding and growth prior to slaughter."

■ Appellants argue that the proposed hog confinement facilities fall within the "other area" language of the feedlot definition. We disagree. The common dictionary definition of "area" is as follows:

> 1 a: a level or relatively level piece of unoccupied or unused ground: a clear or open space of land b: a definitely bounded piece of ground set aside for a specific use or purpose.

Webster's Third New International Dictionary 115 (1993). This definition only extends to open land areas and does not include enclosed structures. The same conclusion must be drawn if the section 172D.1(6) definition is interpreted according to settled legal rules for statutory interpretation. We have recognized that, when specific words of the same nature are used in the statute followed by the use of general ones, the general terms take their meaning from the specific ones and are restricted to the same genus. *De-More v. Dieters,* 334 N.W.2d 734, 738 (Iowa 1983); *Fleur de Lis Motor Inns, Inc. v. Bair,* 301 N.W.2d 685, 690 (Iowa 1981). The words "lot, yard, and corral" all refer to outdoor or open-air facilities. Thus, under the rule of interpretation last referred to, the "other area" language must be limited to an area of the same character. The proposed hog confinement facilities do not fall within the statutory definition of a feedlot. Consequently, nothing contained in section 172D.4(1) abrogates the exempt status of the challenged facilities under section 335.2. We have considered all issues presented and conclude that the district court's declaratory judgment should be affirmed.

**AFFIRMED.**