**Dale E. KUEHL, Pam Kuehl, Clayton Hollman, and Jennifer Hollman, Appellants,**

v.

**CASS COUNTY, Iowa; Cass County Zoning Administrator, Cass County Board of Adjustment, and Cass County Board of Supervisors, Appellees.**

No. 95–960.

Supreme Court of Iowa.

Nov. 20, 1996.

Eldon L. McAfee of Beving, Swanson & Forrest, P.C., Des Moines, for appellants and amicus curiae Iowa Pork Producers Association.

Christina L. Gault, West Des Moines, for amicus curiae Iowa Farm Bureau Federation.

James P. Barry, County Attorney, for appellees.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

CARTER, Justice.

The plaintiffs in the district court, Dale E. Kuehl, Pam S. Kuehl, Clayton Hollman, and Jennifer Hollman (Kuehls and Hollmans), sought to establish that their proposed hog confinement facility in Cass County was exempt from county zoning regulations. The Cass County Board of Adjustment disagreed, as did the district court. The Kuehls and Hollmans urge on this appeal that these decisions represent an erroneous interpretation of Iowa Code section 335.2 (1995). The appellees, who are the county board of adjustment, the county zoning administrator, the county board of supervisors, and Cass County (collectively referred to herein as Cass County), disagree and urge that the district court's interpretation of the controlling statutes was correct. After reviewing the record and considering the arguments of the parties, we are convinced that the proposed hog confinement facilities are exempt from county zoning regulation as a consequence of being primarily adapted for use for agricultural purposes. We therefore reverse the judgment of the district court.

Kuehls and Hollmans have formed a joint venture for purposes of building and operating a hog confinement operation in Cass County. They propose to build one confinement building to house 2000 hogs and anticipate the building of a second structure of equal size for the same purpose. It is proposed that the facilities will be constructed on a five-acre site to be purchased by the Kuehls and Hollmans. Their contract to purchase the land is subject to satisfactory resolution of the present zoning dispute.

The Cass County zoning administrator determined that the proposed hog confinement facility was not a permissible use under the county zoning ordinance unless plaintiffs obtained a special exception from the board of adjustment. In taking the matter before the board of adjustment, the plaintiffs contended that no exception was needed because their proposed facility was exempt from county zoning under section 335.2. The board of adjustment voted four to one to uphold the applicability of the zoning regulations to plaintiffs' proposed hog confinement facilities. In reviewing the board of adjustment's decision, on a petition for declaratory judgment and a petition for writ of certiorari, the district court upheld that decision.

The only equipment that will be located on the property under the proposed hog confinement operation will be that which is necessary for the proposed hog operation. No other buildings will be located on the site. The two proposed units will have self-contained manure pits located underneath the buildings.

It is contemplated that the manure pits will be emptied by hired labor. Kuehls and Hollmans have oral commitments for access to approximately 1300 acres for manure disposal. At best, however, manure disposal is speculative at this time. A manure management program in conjunction with the U.S.D.A. soil conservation service must be developed prior to operation of the facility.

Pursuant to the Kuehls' and Hollmans' plans for development of the facility, the hogs will be raised under a contract with White Oak Mills, a Pennsylvania corporation. This contract will be for five years. White Oak Mills will own the hogs and deliver them to the Kuehls and Hollmans when they are approximately forty-five pounds. Management and labor for the hog operation will be furnished by the Kuehls and Hollmans. At approximately 250 pounds, the hogs will be marketed, and White Oak Mills will receive the sale proceeds.

The Kuehls and Hollmans will receive cash compensation under the agreement for their labor and the use of their facilities. White Oak Mills will purchase all feed for the hogs from local suppliers. The Kuehls and Hollmans will be responsible for ordering and monitoring the necessary rations. Other services necessary to raise the hogs, such as veterinary services will be provided by local suppliers and paid for by White Oak Mills.

The Kuehls have been engaged in farming in the area of the proposed hog confinement facilities since 1977. They are currently farming 2000 acres of corn and soybeans. They own approximately 160 acres of land and cash rent or custom farm the balance. The five-acre site for the proposed hog confinement facilities is adjacent to land now

rented by the Kuehls. In addition, the Kuehls currently farrow approximately 3500 to 4000 head of hogs on the farm where they reside. They also custom finish another 3500 head of hogs per year at locations other than the farm where they reside.

The Hollmans reside in Atlantic. Clayton Hollman has been employed as the comptroller of various agribusiness operations, and the Hollmans presently operate a 450–head hog finishing operation on ground rented from the Kuehls. Other facts that are material to the decision of this dispute will be discussed in connection with our consideration of the legal issues presented.

The district court concluded that the "agricultural purposes" exemption contained in section 335.2 does not apply to the Kuehls' and Hollmans' proposed hog confinement facilities because those facilities are separate from any farming operation otherwise carried on by the Kuehls or Hollmans. The court derived this rationale from the decision of this court in *Farmegg Products, Inc. v. Humboldt County,* 190 N.W.2d 454, 457–60 (Iowa 1971). That case involved a facility proposed by an agribusiness corporation for raising 40,000 chicks in confinement every twenty-two weeks. The confinement facility would be located on a four-acre tract purchased by the corporation. At the end of each twenty-two-week period, the chicks would be transferred to egg-producing facilities of the corporation located at another site.

In rejecting a claim that this facility was for "agricultural purposes" and thus exempt from county zoning regulations under section 335.2, this court concluded that:

> [T]he question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations. The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity.

*Id.* at 458 (quoting *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 760–61, 69 S.Ct. 1274, 1277–78, 93 L.Ed. 1672, 1679–80 (1949)). In applying that test, this

court ultimately concluded with respect to the Farmegg Products' chick-raising operation that:

> It is clear the activity proposed by plaintiff in the present case will be organized and carried on as an independent productive activity and not as part of an agricultural function.

*Farmegg Prods.,* 190 N.W.2d at 459.

Cass County urges that the *Farmegg Products* decision is controlling and, just as the chick-raising function in that case was not for agricultural purposes, neither are the proposed hog confinement facilities that the Kuehls and Hollmans propose. The Kuehls and Hollmans respond that the *Farmegg Products* decision has been considerably eroded by cases later decided by this court. The issue with which we are presented is, in its entirety, a matter of statutory interpretation.

The language of the exemption statute on which the Kuehls and Hollmans rely is as follows:

> Except to the extent required to implement section 335.27, *no ordinance adopted under this chapter applies to* land, farm houses, farm barns, farm outbuildings or *other buildings or structures which are primarily adapted, by reason of nature and area, for use for agricultural purposes,* while so used. However, the ordinances may apply to any structure, building, dam, obstruction, deposit or excavation in or on the flood plains of any river or stream.

Iowa Code § 335.2 (1995) (emphasis added).

We believe that a fair reading of the words "for use for agricultural purposes" read in the context of the act refers to the functional aspects of buildings and other structures, existing or proposed. The qualifying words "primarily adapted by reason of nature and area" also refer to the proposed structures and the site on which they are located. We have recognized in *Farmegg Products,* 190 N.W.2d at 457–58, and in the recent case of *Thompson v. Hancock County,* 539 N.W.2d 181, 183 (Iowa 1995), that in determining what uses are for agricultural purposes we view agriculture as the art or

science of cultivating the ground, including harvesting of crops and rearing and management of livestock. Applying this standard, it appears without dispute that the structures proposed to be erected by the Kuehls and Hollmans are primarily adapted for agricultural use by reason of the nature of the structures. Moreover, there is no circumstance incident to the site on which they are located that in any way detracts from that purpose.

Cass County seeks to embellish upon the statutory language an additional requirement that the intended use be in association with other traditional farming activities that exist independently of the use to be made of the structures sought to be exempted. This additional requirement necessarily leads to an examination not only of the use to be made of the land and structures claimed to be exempt but also of the persons or entities directing that use. Under this approach, structures that are used in exactly the same manner will be treated differently depending on whether the operators of the facilities are carrying on other activities, which by themselves are of no consequence under the zoning laws. We are convinced that the language of the statute provides no basis for this distinction.

As we noted in *Helmke v. Board of Adjustment*, 418 N.W.2d 346, 351 (Iowa 1988), the test we articulated in *Farmegg Products* was derived from the Supreme Court's decision in *Farmers Reservoir*, 337 U.S. at 760–61, 69 S.Ct. at 1277–78, 93 L.Ed. at 1679–80. That case sought to define agriculture as an occupation for purposes of the Fair Labor Standards Act. In reconsidering this issue, we are satisfied that defining "agricultural" as an occupation is an entirely different matter than attempting to define agricultural uses of buildings and other structures for purposes of zoning laws.

To the extent that the *Farmegg Products* engrafted a requirement on exempt agricultural uses not contained in the statute creating the exemption that decision must now be disapproved. Indeed, we believe our decision in *Helmke,* which pointed to the considerable criticism that has been directed toward *Farmegg Products* by commentators and courts of other jurisdictions, was a break

from the view that an exempt agricultural use must be in conjunction with a traditional agricultural use otherwise in existence. For all of the reasons stated, we hold that the Kuehls and the Hollmans have established that their proposed hog confinement facilities are primarily adapted for use for agricultural purposes and thus exempt from county zoning regulations under the provisions of section 335.2. The judgment of the district court is reversed.

**REVERSED.**