# IN THE SUPREME COURT OF IOWA

No. 11–0683

Filed March 29, 2013

**DARYL D. LANG,**

　　Plaintiff,

vs.

**LINN COUNTY BOARD OF ADJUSTMENT,**

　　Defendant.

---

**DARYL D. LANG** and **ARLENE P. LANG,**

　　Plaintiff,

vs.

**LINN COUNTY BOARD OF ADJUSTMENT,**

　　Defendant.

---

　　On review from the Iowa Court of Appeals.

　　Certiorari to the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

　　Property owners seek further review of a court of appeals decision upholding the district court's denial of their certiorari petitions challenging certain county zoning decisions. **WRITS ANNULLED; DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Robert M. Hogg and James W. Affeldt of Elderkin & Pirnie, P.L.C., Cedar Rapids, for plaintiff.

Gerald A. Vander Sanden, County Attorney, and Robert A. Hruska, Assistant County Attorney, for defendant.

**MANSFIELD, Justice.**

### I. Introduction.

This certiorari proceeding requires us to address the agricultural exemption from county zoning. *See* Iowa Code § 335.2 (2011). The property owners who brought this action had a lengthy dispute with Linn County over whether houses they had built were subject to the county's zoning and subdivision ordinances. We are asked to review two separate decisions by the Linn County Board of Adjustment—in 2004 to deny an agricultural exemption for a 6.52-acre parcel that included the property owners' residence; and in 2007 to deny an agricultural exemption for a second house on a 43.3-acre parcel that the property owners argued was an additional farmhouse. Although the issues are close, we ultimately conclude substantial evidence supports the Board's determinations that the houses at issue were not "primarily adapted, by reason of nature and area, for use for agricultural purposes." *Id.* In reaching our conclusions, we are significantly aided by the thorough and well-reasoned opinions authored by the district court and both the majority and the dissent of the court of appeals.

### II. Facts and Procedural Background.

The history of this matter is complicated, but we will attempt a summary. In 1995, the Langs acquired a 48.9-acre parcel near Springville in Linn County. At the time, the parcel contained one single-family dwelling. The property includes grassland, trees, and a pond.

Using the farmstead split process, the Langs subdivided a parcel from the 48.9 acres consisting of the original house (House #1) and approximately 1.86 acres around it. They sold that parcel to a third party in 1997.

The Langs then built a second house (House #2) on the remaining forty-seven acres. They occupied that house for a period of time. In 1999, the Langs petitioned repeatedly to have a separate parcel consisting of the second house and a surrounding 3.7 acres rezoned residential. The county turned down these requests. Ultimately, the Langs subdivided and conveyed the 3.7 acres with the second house to Mr. Lang individually. In 2002, the county approved the subdivision, but made clear that it was doing so on the basis of an agricultural exemption, and "[i]f at any time this tract is sold and no longer has agriculture occurring or the house is occupied by persons not 'engaged in agriculture,' this parcel may be considered to be nonconforming unless in compliance with zoning regulations in effect at that time." Later that year, Mr. Lang sold the 3.7-acre parcel including House #2 to another third party.

The Langs wanted to build two additional houses (House #3 and House #4) on the remaining 43.3 acres, which they still owned jointly. Linn County zoning prohibits more than one dwelling on a single piece of property. Thus, the Langs applied for an agricultural exemption from the zoning ordinance, representing that both houses would be occupied by the Lang family and would be engaged in the farming operation on the property. The county granted the exemption in May 2000, but cautioned that "the property may **not** be eligible to be subdivided" and the Langs should be aware "of the implications of two dwelling units on the same parcel of land."

In August 2002, the county issued a notice of zoning violation for the Langs' property (the 43.3 acres with the two houses). Although the Langs had personally moved into House #4, the county maintained that the other house (House #3) had never been occupied by Lang family

members but instead was being rented out to tenants who were not participating in the farming operation. As a result, according to the county, Mr. Lang was in violation of the zoning ordinance prohibiting more than one house on a property. Following a trial in July 2003, the district court ruled in the county's favor. It found the occupants were "mere tenants" and "it is quite a stretch to state that these occupants are 'engaged in the agricultural operation.' For the most part, these occupants inure their livelihood from activities off the property and wholly unrelated to agriculture." The court enjoined Mr. Lang from having House #3 occupied by someone who was not engaged in the farming operation and further ordered that the house "remain vacant until the Defendant provides satisfactory evidence to the Plaintiff that the house would be occupied by someone engaged in the farming operation." The court also imposed a $500 civil penalty under the Linn County Code of Ordinances. Mr. Lang did not appeal this order.

In February 2004, the county initiated contempt proceedings against Mr. Lang. Following a hearing in June 2004, the district court adjudicated Mr. Lang in contempt, determining that he had willfully disobeyed the court's prior order. The court fined Mr. Lang $500. The court found that Mr. Lang had arranged for other tenants to occupy House #3 without notifying the county and that the tenants were again not actively engaged in the farming operation. The court added:

> The Court wholly discounts Mr. Lang's assertion that these tenants served as a 'security guard' and therefore are engaged in the farming operation. Mr. Lang lives on the same parcel. . . . There is nothing unique about a tree farm or a fish farm which necessitates any more security than any other farming operation in this state.
>
> For the most part, the labor-intensive part of the tree farm and fish farm have already been concluded. While it may be the case that from time to time additional trees will

need to be planted, there is little other activity with regard to the tree farm for anyone to do other than occasionally walk the area to check for damage or disease. Mr. Lang can certainly accomplish this fact without hiring it done . . . .

Mr. Lang pays no money to have these persons engaged in his farming operation. To the contrary, he only claims that they are the benef[iciaries] of reduced rent. Quite obviously, if the house is not occupied, Mr. Lang would be receiving no rent, so even reduced rent is a benefit to him. Furthermore, Mr. Lang has provided no evidence that the rent for this property is in fact substantially lower than other rural properties of similar kind and character.

. . . It well appears to this Court that Mr. Lang acts first and then chooses later to reconcile his conduct with the ordinance.

Mr. Lang did not appeal this contempt finding.

Meanwhile, in September 2003, the Langs began to attempt to solve their two-house problem in a different way. They subdivided their property once again by conveying 6.52 acres of the 43.3 acres to Daryl Lang, individually. This 6.52-acre parcel included the larger of the two houses (House #4—the one the Langs occupied), but not the smaller "tenant" house (House #3). The Langs figured that if both properties could qualify separately as farm properties with their own farmhouses, the entire 43.3 acres and both houses would benefit from an agricultural exemption.

The 6.52-acre parcel was in the shape of a long and narrow rectangle. One end of the rectangle connected to the road. House #4 was at the other end, with a driveway running the length of the rectangle. The proposed subdivision included a fragment of the pond, which House #4 overlooked.

In December 2003, the county cited Mr. Lang for a zoning/subdivision violation because the minimum home lot size in that area of the county was thirty-five acres unless an approved plat existed

(and none existed here for the 6.52-acre parcel). Mr. Lang responded by seeking an agricultural zoning exemption from the county for "a house located on a 6.52-acre tract of land." On his exemption sheet, Mr. Lang listed the following crops as being produced on the property:

Trees, 4–5 acres, 80% for commercial production
Raspberries, 0.1 acres, 10% for commercial production
Blackberries, 0.1 acres, 10% for commercial production
Asparagus, apples, 1.0 acres, 75% for commercial production
Grapes, tomatoes, 0.2 acres, 15% for commercial production

Mr. Lang's request for an exemption was denied by the county's zoning administrator. Mr. Lang appealed to the Linn County Board of Adjustment, and in June 2004, a hearing took place. The fighting issue was whether the Langs' residence (House #4) could qualify as a farmhouse now that it was only attached to the 6.52 acres.

Photographs that were introduced into evidence at the June 2004 hearing revealed that House #4 on the 6.52 acres was quite substantial with two-story gabled wings. Surrounding the house was a well-kept lawn.[1]

Although the Langs claimed to be producing trees, raspberries, blackberries, asparagus, apples, grapes, and tomatoes on the 6.52 acres in their exemption filing, they provided no records of production or sales. The photographs indicated that the raspberry bushes were wild and in a wooded thicket. So was the grapevine. The asparagus appeared to be wild as well. There was a photograph showing three apple trees. The Langs did buy approximately 3400 infant trees at a cost of approximately $1500 from the State Forest Nursery, a division of the Iowa Department

---

[1]The photographs of the Langs' property were taken with their permission.

of Natural Resources (DNR), and had planted some of them on the 6.52 acres; the record does not indicate how many were planted there as opposed to on the other parcel. Nonetheless, the 6.52 acres clearly contained a large number of young trees, as well as preexisting wild trees.[2]

The Langs established at the Board hearing that they had enrolled their tree planting in DNR's Resource Enhancement and Protection (REAP) program. Additionally, they pointed out that portions of the remaining thirty-five-plus acres (what was left behind after the conveyance of the 6.52 acres) were enrolled in the United States Department of Agriculture's Conservation Resource Program (CRP). The Langs also argued at considerable length that House #4 could be considered a farmhouse because they owned *other* farmland in Jones County, Johnson County, and elsewhere in Linn County. They insisted that the house did not need to be contiguous, or even near, the farmland that gave the house "farmhouse" status.[3]

No neighbors appeared at the Board hearing in support of the Langs' request for an agricultural exemption for their house. Two neighbors testified in opposition. One of them, the purchaser of the original house from the Langs on the 1.86 acres, said that "more and more houses have been added" and that he felt he was "living in a development." He explained that he had paid the Langs more than the

---

[2]Mr. Lang's May 2004 "General Tree Management Plan" provided that his objectives were:

> To establish a woodland area on property.
> To have an opportunity to work with trees.
> To provide habitat for wildlife.
> For future financial potential.
> To keep woodland in good condition for future generations.

[3]Mr. Lang acknowledged, however, that he is not primarily employed in farming.

asking price for his house because the farmhouse split had been completed, and he did not expect further development. Another neighbor said that if the exemption were granted by the county, "anyone claiming to be a farm could build and split out the house and build and split the house without meeting any zoning requirements."

The zoning administrator contended at the Board hearing that "based on the pattern of events in the past, the size and the current use of the parcel, and the occupants' tenuous involvement if any in agriculture, . . . the subject house cannot be considered to be a farmhouse." The zoning administrator said that it was important to look at the "surrounding events" because there was no clear, bright-line legal definition of what constitutes a farmhouse. The zoning administrator therefore recommended denial of the agricultural exemption for the house.

At the conclusion of the hearing, the zoning administrator's determination was upheld by the Board on a two-to-two divided vote. *See* Iowa Code § 335.17 (indicating that the concurring vote of three members of the board shall be necessary to reverse any decision of the administrative official).

Unable to obtain county approval for the carve-out of the 6.52 acres that included House #4, the Langs sought certiorari review from the district court. The certiorari proceeding over the June 2004 Board proceeding comprises the first part of the Langs' present appeal.

In the meantime, the Langs tried again to obtain an agricultural zoning exemption from the county for two houses (House #3 and House #4) on the full 43.3 acres (i.e., an unsubdivided property). As before, this effort was based on having a tenant in House #3 who was an active

participant in the agricultural operation.[4]  A lease was prepared between the Langs and their proposed tenants, Edwin and Bernice Tiernan.  The lease was submitted to the county and specifically provided that "Mr. Tiernan's contribution to the Agricultural Operation will never be less than 24.5 hrs/wk and usually will be more than this."  Various chores were listed with corresponding minimum times for performing those chores.  For example, the lease required that Mr. Tiernan "case" (or inspect) the tree farm a minimum of 1.5 hours per day.

In February 2005, by a three-to-two vote, the Board overruled the recommendation of the zoning administrator and granted an agricultural exemption for the Tiernans' proposed tenancy for House #3.  However, the Board required Mr. Tiernan to keep and file a log documenting "the number of hours and nature of work performed" in order to allow the county to monitor on an ongoing basis whether the Tiernans' occupancy of the house would continue to qualify for an agricultural exemption.

Mr. Tiernan died late in 2006, and Ms. Tiernan moved out in March 2007.  At this point, the Langs sought to have Ms. Lang's son and his family move into the house.  This would have been a violation of the July 2003 court order unless the Langs first sought the county's approval and demonstrated that the proposed use of House #3 would meet the criteria for an agricultural exemption.  The Langs indicated that Ms. Lang's son would perform the same tasks Mr. Tiernan had been doing.

The county zoning administrator reviewed the Tiernan 2005–2006 log reports.  Based thereon, he recommended denial of the Langs' request

---

[4]As noted before, under the July 2003 court order, so long as both House #3 and House #4 were situated on the same parcel, House #3 had to remain vacant unless the Langs "provide[d] satisfactory evidence to the [county] that the house would be occupied by someone engaged in the farming operation."

for a continued agricultural exemption for House #3. Even accepting the log as true and accurate, the administrator concluded that Mr. Tiernan had spent only an average of 2.6 hours per workday, or well less than half-time, on tasks that could be classified as agricultural. Thus, the administrator concluded that House #3 could not be considered a second farmhouse on the property, as the tenants were not "primarily engaged in agriculture."

In May 2007, this matter went to a hearing before the Board. House #3, a ranch house, is not as large as House #4. At the hearing, the Langs reported that they had planted thousands of trees on the land, that they had stocked fish in the pond (although no fish had ever been harvested and no one had ever been charged to fish there), and that sheep grazed on the land.

Two neighbors appeared at the Board hearing and questioned the accuracy of the log. One said Mr. Tiernan was a

> nice old guy and he was very sick and he probably didn't do a tenth of the hours. . . . He wasn't able. . . . He went to Iowa City and had a bone marrow transplant and was in terrible shape and he finally died.

This neighbor added that the sheep did not belong to the Langs; they belonged to someone else. As he put it, the Langs "bring them in when they have a case before [the county] and they [the sheep] go back home when the case is over or a little after." He added that the person who owned the sheep (not Mr. Tiernan) came and checked on them daily while they were on the Langs' property.[5] The neighbor concluded, "It would be handy for everybody if we could all have a noninspected, nonconforming house, rent it out, and call it a farmhouse."

---

[5]Mr. Lang disputed that the sheep were only present when the Langs had a matter before the county, but he did not dispute that they were owned by someone else who actually took care of them.

Another neighbor said, "In my opinion it's a backdoor opportunity to develop a housing development." She acknowledged that Mr. Tiernan was living in the house, but she said he was fighting cancer and "a lot of times we didn't see him come out of the house." As at the previous hearing, no neighbors appeared in support of the Langs.

As noted, the Langs indicated their son would be taking over Mr. Tiernan's role in the farm operation. But when she was specifically asked, Ms. Lang acknowledged that her son would be working an off-farm job to support his family. She did not state what that job was or how much time it would take.

After hearing the evidence, the Board voted three-to-one to deny an agricultural zoning exemption for the planned occupancy of House #3. The Langs sought certiorari review from the district court of this determination as well. The district court subsequently consolidated this proceeding with the separate proceeding challenging the June 2004 Board decision.

On April 14, 2011, the district court issued a lengthy ruling in the combined case. It found that substantial evidence supported both the Board's decision in June 2004 to deny the agricultural exemption to House #4 on the 6.52 acres, and the Board's decision in May 2007 to deny the agricultural exemption to House #3 on the 43.3 acres (that also included House #4). Accordingly, it denied the Langs' petitions for writ of certiorari.

The Langs appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the district court's ruling in a split decision, with one panel member dissenting. We granted further review.

### III. Standard of Review.

The parties agree that the Board's factual findings should be reviewed for substantial evidence. *See Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 495 (Iowa 2008) (interpreting the identically worded provisions of chapter 414—regarding city zoning). "If the reasonableness of the board's action is open to a fair difference of opinion, the court may not substitute its decision for that of the board." *W & G McKinney Farms, L.P. v. Dallas Cnty. Bd. of Adjustment*, 674 N.W.2d 99, 103 (Iowa 2004) (citation and internal quotation marks omitted). We, of course, review claimed legal errors for correction of errors at law. *Id.*

### IV. Legal Analysis.

Chapter 335 of the Iowa Code empowers counties to engage in zoning. However, section 335.2 provides:

> Except to the extent required to implement section 335.27, no ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings or other buildings or structures which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used.

Originally, this provision read:

> No regulation or ordinance adopted under the provisions of this act shall be construed to apply to land, farm houses, farm barns, farm outbuildings or other buildings, structures, or erections which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood, while so used.

*See* 1947 Iowa Acts ch. 184, § 2 (codified at Iowa Code § 358A.2 (1950)).

In 1963, the general assembly amended the relevant part of the statute by changing the clause, "which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood, while so used," to the present version. *See* 1963 Iowa Acts ch.

218, § 2 (codified at Iowa Code § 358A.2 (1966), currently found, as amended, at Iowa Code § 335.2 (2011)). Thus, the general assembly deleted the requirement that the agricultural use of the property had to be "a primary means of livelihood," but added a requirement that the property had to be "primarily" adapted to agricultural use.

Accordingly, following the 1963 amendment, the plain language of section 335.2 makes it clear that an applicant for an exemption must demonstrate that the "land, farm houses, farm barns, farm outbuildings or other buildings or structures" are "primarily adapted" for the asserted agricultural purpose. An applicant can demonstrate this based on "nature and area."

In this proceeding, the district court concluded that the 6.52 acres of land with House #4 were "not *primarily* adapted, by reason of nature and area, for use for agricultural purposes" and, therefore, upheld the Board's June 2004 denial of that exemption. Additionally, the court upheld the Board's May 2007 denial of the exemption with respect to House #3 under the two-house scenario with Ms. Lang's son and family occupying House #3. There as well, the district court concluded that the alleged farmhouse was not "*primarily* adapted, by reason of nature and area, for use for agricultural purposes." *See* Iowa Code § 335.2.

We most recently had to interpret section 335.2 in *Kuehl v. Cass County*, 555 N.W.2d 686 (Iowa 1996). There, we held that the plaintiffs were entitled to an exemption from county zoning regulations for the erection of hog confinement buildings on a five-acre site. *Id.* at 687–89. We concluded:

> We believe that a fair reading of the words "for use for agricultural purposes" read in the context of the act refers to the functional aspects of buildings and other structures, existing or proposed. The qualifying words "primarily

> adapted by reason of nature and area" also refer to the proposed structures and the site on which they are located. We have recognized . . . that in determining what uses are for agricultural purposes we view agriculture as the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock. Applying this standard, it appears without dispute that the structures proposed to be erected by the Kuehls and Hollmans are primarily adapted for agricultural use by reason of the nature of the structures. Moreover, there is no circumstance incident to the site on which they are located that in any way detracts from that purpose.

*Id.* at 688–89.

We have not previously decided when a house becomes a farmhouse for section 335.2 purposes. However, in 1997, the attorney general issued an opinion. *See* Op. Att'y Gen. No. 97–1–1(L) (Jan. 17, 1997), 1997 WL 994719. Among other things, the attorney general indicated that the individuals inhabiting any farmhouses need to be "engaged in agriculture on the land where the houses are located." *Id.* at *5. Based on the 1963 amendment to the statute, the attorney general added that the individuals do not have to be engaged in commercial agriculture as a primary source of income. *Id.* Yet, "the acreage of the farm involved certainly may be a relevant factor." *Id.* at *4.

**A. The Board's June 2004 Determination.** In our view, the Board could reasonably conclude that the Langs' large, manorial residence on the 6.52 acres was a residential tail wagging a farmland dog and that the property as a whole was not primarily dedicated to agriculture. Although the Langs had recently planted small trees, they could not be expected to mature for many years and could be viewed as having an aesthetic purpose. Photographs indicated that the other claimed farming activities were not substantial in scope, even relative to the size of the parcel. The Langs presented no evidence of actual

production, beyond the bare claims they made in their application for an agricultural exemption.

Our legislature clearly indicated by the 1963 amendment that the agricultural activities need not be "a primary means of livelihood." However, the legislature at the same time added the requirement that the property be "primarily" adapted to agricultural use. In our view, this authorizes the county to deny the farmhouse exemption when the record, as here, indicates that the agricultural activities are basically a sideline designed to obtain an agricultural zoning exemption for the owners' residence. The Board was entitled to look at the relative size, value, and construction date of the house compared to the scope, value, and duration of the claimed agricultural activities. For example, we do not believe the legislature intended to allow a homeowner to avoid county zoning requirements simply by having a tomato patch in his or her backyard.

No one doubts that farm income is subject to ups and downs. Iowa's farm families have to be entrepreneurs, and often they have to take on second and third jobs. The legislature did not want a farmer to lose a zoning exemption for an acreage just because farm income did not provide most of the dollars needed to put food on the table. Yet, at the same time, by replacing "primary means of livelihood" with "primarily adapted," the legislature did indicate that the overall importance and scope of the agricultural operation could be considered in determining the status of an alleged farmhouse. *See* 1963 Iowa Acts ch. 218, § 2.

Furthermore, the legislature continued to make it clear that the "nature and area" of the property could be taken into account. *See* Iowa Code § 335.2. The term "nature" is often used to refer to the "inherent character" or "essential characteristics" of a thing. *See Merriam–*

*Webster's Collegiate Dictionary* 826 (11th ed. 2004). Thus, the legislature's language would appear to authorize a county to look at the underlying realities of the situation.

We believe a recent court of appeals decision is instructive. *See Kramer v. Bd. of Adjustment*, 795 N.W.2d 86, 92 (Iowa Ct. App. 2010). There, a storage lagoon was constructed on farmland to hold organic wastewater from a nearby chondroitin sulfate plant. *Id.* at 88. The argument was made that the lagoon should be exempt from county zoning because the wastewater was used for fertilizing the crops on the farmland (although it could not be sold to any other party). *Id.* at 91. The court of appeals rejected this argument, holding that the wastewater storage lagoon was not "primarily adapted for use for agricultural purposes," even though the wastewater may have "some fortuitous benefit to crop enhancement." *Id.* at 93. We agree with the court of appeals that the "primarily adapted" test allows county zoning authorities to consider the overall importance and underlying purpose of the agricultural activities in question.

The Langs contend that the county applied a minimum-acreage test and flunked the 6.52-acre parcel simply because it was not big enough. It would have been improper to utilize such a litmus test, but the county did not do so. It is true that under the Linn County zoning ordinances, so long as the Langs' land exceeded thirty-five acres and was used for agricultural production it was conclusively presumed to be entitled to the agricultural exemption. Thus, the county has never disputed that the Langs could treat their residence as an exempt farmhouse while on the 43.3 acres that included the vast majority of the fish pond and all the CRP acreage.

However, the zoning administrator's report, the recording of the June 2004 hearing, and the report of the Board's two-to-two decision all indicate that the county did not summarily reject the Langs' application based on lot size. Rather, it took into account a variety of circumstances and applied the appropriate standard—whether the 6.52-acre lot and house were "primarily adapted, by reason of nature and area, for use for agricultural purposes." *See* Iowa Code § 335.2. In particular, the zoning administrator questioned the bona fides and substantiality of the Langs' agricultural activities on the 6.52 acres.

Once the Langs attempted to subdivide the property so that their residence rested on only 6.52 acres, the relevant question became whether *that* parcel and the large residence thereon, not some adjoining parcel, were "primarily adapted" to agricultural purposes. The size of the parcel was one appropriate consideration. *See id.* (stating that "area" is a consideration); Op. Iowa Att'y Gen. No. 97–1–1(L) at *4. If size were not relevant, then nothing could prevent a developer from obtaining a zoning exemption for an entire development subdivided into half-acre lots so long as some agricultural product were planted in the development and tended by the homeowners.

Like the district court, we view this as a close case, and our decision is largely tied to the standard of review and the statutory requirement that the property be primarily adapted for use for agricultural purposes. Certainly, the statute contemplates the possibility of 6.52-acre farms. But in this case, the county's determination was supported by substantial evidence.

**B. The Board's May 2007 Determination.** The May 2007 hearing concerned whether House #3 on the 43.3 acres when occupied by Ms. Lang's son would qualify for an agricultural zoning exemption as

a second farmhouse in addition to House #4. Because the county ordinances prohibit more than one dwelling on a single undivided parcel of land, the Langs needed to have an agricultural exemption for House #3 in order to avoid a violation of the ordinances and the existing court order. The county has never disputed that the 43.3 acres of land, taken as a whole, should be deemed agricultural. However, regardless of the status of the land, section 335.2 anticipates that a county may consider whether a specific building or structure thereon is primarily adapted for use for agricultural purposes. *See* Iowa Code § 335.2 (stating that "no ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings *or* other buildings or structures which are primarily adapted, by reason of nature and area, for use for agricultural purposes, while so used" (emphasis added)); *DeCoster v. Franklin County*, 497 N.W.2d 849, 853 (Iowa 1993) (considering whether a waste storage basin on agricultural land was entitled to an agricultural zoning exemption and determining that it was); *Kramer*, 795 N.W.2d at 93–94 (finding that a lagoon on farmland was not entitled to such an exemption).

In recommending denial of the exemption, the zoning administrator emphasized that, based on his reading of the log, the prior tenant had devoted only 2.6 hours a day to what he considered to be agricultural activities. The Langs represented that Ms. Lang's son was going to perform the same tasks, making the prior tenant's performance a fair benchmark.[6] Moreover, Ms. Lang's son, unlike Mr. Tiernan, was going to have a regular day job, the details of which the Langs did not

---

[6]As previously noted, under the existing court order, which Mr. Lang did not appeal, Ms. Lang's son and family could not occupy House #3 without first demonstrating to the county that the occupancy would qualify for an agricultural exemption.

disclose. In addition, significant evidence emerged at the hearing that the log itself was overstated. Neighbors pointed out that Mr. Tiernan was not outside very much and was undergoing medical treatment for a serious illness. One board member "questioned the number of hours logged for mowing, stating they seemed excessive for the number of acres." It was also essentially undisputed that Mr. Tiernan had not cared for the sheep, even though the lease presented by the Langs had stated that he would provide an hour of care for them each day.

Based on the foregoing, we believe substantial evidence supports the Board's finding that House #3 under the son's tenancy would not be "primarily adapted" for agricultural purposes. *See* Iowa Code § 335.2 (stating that the agricultural zoning exemption applies only when the property is "so used" for agricultural purposes). When landowners build an additional house on their land, rent it out, and then want to claim it as another exempt farmhouse, it is appropriate for the county to ask how much time the tenants of the house spend on farming activities. Otherwise, a farmer could erect multiple homes and avoid county zoning simply by assigning nominal farm tasks to an occupant of each home. *See State v. Huffman,* 253 N.E.2d 812, 816–17 (Ohio Ct. App. 1969) (upholding a finding that the defendant violated an agricultural use zoning ordinance when he allowed two mobile homes to be placed on his property and rejecting the argument that the mobile homes were "incident to" an agricultural use even though one of the tenants worked "occasionally" or "part-time" on the farm).

The Langs claim that the county in effect backtracked on its 2005 agreement when it declined to grant an exemption in 2007. However, the record would support the opposite conclusion: namely, that even though an agreement was reached, it was not fulfilled by the Langs' prior tenant.

This is not to fault Mr. Tiernan; he was seriously ill. But it supports the Board's decision to deny an agricultural exemption for the planned occupancy of the house by Ms. Lang's son and his family on the same claimed basis as the prior tenant.

We agree with the district court that the reasonableness of the Board's May 2007 decision, like its June 2004 decision, was "open to a fair difference of opinion." We do not foreclose the possibility that there can be more than one exempt farmhouse on a property. Yet, we cannot find that the Board either misapplied the law or lacked substantial evidence for its May 2007 determination.

One final point should be noted. The Langs' construction of various homes on what began as one property had the potential to cause problems for third parties down the road. When a house has been erected by taking advantage of an agricultural exemption, but then is later sold to a person who is not engaged in agriculture, as occurred in this case with respect to House #2, the house becomes a nonconforming use, which limits the new owner's ability to modify or, if necessary, to rebuild the house.

**IV. Conclusion.**

Reviewing the record as a whole, we are impressed by the careful attention devoted to this matter by dedicated public officials. From listening to the recordings of the hearings, it is clear that the members of the Board who cast votes on both sides took their duties very seriously while trying to apply a statute that has some gray areas. As we and the district court have said, the issues are fairly close; reasonable people can reach different conclusions. In the end we are persuaded that substantial evidence supports the Board's June 2004 and May 2007 decisions.

**WRITS ANNULLED; DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Wiggins, J., who dissents, and Hecht and Appel, JJ., who take no part.

**WIGGINS, Justice (dissenting).**

I respectfully dissent. When applying the correct legal standard, substantial evidence does not support the Linn County Board of Adjustment's findings.

The controlling statute is Iowa Code section 335.2, which "prohibits counties from zoning agricultural land and structures." *Goodell v. Humboldt County*, 575 N.W.2d 486, 491 (Iowa 1998). Identifying the proper standard to use for determining whether an applicant is entitled to an agricultural exemption under section 335.2 is a matter of statutory construction.

When construing a statute, we must determine legislative intent. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). We ascertain " 'legislative intent from the words chosen by the legislature,' " not by what the legislature should have or might have said. *State v. Dohlman*, 725 N.W.2d 428, 431 (Iowa 2006) (quoting *Auen*, 679 N.W.2d at 590). We "may not extend, enlarge or otherwise change the meaning of a statute" under the guise of construction. *Auen*, 679 N.W.2d at 590. Generally, we presume the legislature intended to change existing law when it adopts an amendment. *Cedar Rapids Steel Transp., Inc. v. Iowa State Commerce Comm'n*, 160 N.W.2d 825, 831–32 (Iowa 1968).

The general assembly adopted section 335.2 in 1947.[7] *See* 1947 Iowa Acts ch. 184, § 2 (codified at Iowa Code § 358A.2 (1950)). The statute originally read as follows:

> No regulation or ordinance adopted under the provisions of
> this act shall be construed to apply to land, farm houses,

---

[7]Section 335.2 was originally codified at section 358A.2. The code editor transferred the section to its current location in 1993. All references to the section, both before and after the transfer, will be to section 335.2.

> farm barns, farm outbuildings or other buildings, structures, or erections *which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood, while so used.*

*Id.* (emphasis added). Accordingly, the original version of the statute contained a two-part test. The first part focused on the adaptation "by reason of nature and area, for use for agricultural purposes." The second addressed whether the applicant for the exemption used the land or structures adapted for agricultural purposes "as a primary means of livelihood." This second part required county zoning administrators to "inquire into the sources and amounts of income of each applicant for [an exemption]." Note, *"Ill Blows the Wind that Profits Nobody": Control of Odors from Iowa Livestock-Confinement Facilities*, 57 Iowa L. Rev. 451, 496 (1971) [hereinafter *Ill Blows the Wind*]. Of the two parts, apparently the latter was more important. *Id.* (citing 1953–1954 Iowa Att'y Gen. Biennial Rep. 96).

Although the bill containing the agricultural exemption did not explain its purpose, a predecessor bill that also contained the exemption asserted it was " 'intended as a protection for the farmer and his investment in his land.' " *Goodell*, 575 N.W.2d at 494 (quoting H.F. 426, 1947 H.J. 587 (comments and explanation)). Accordingly, the exemption "was a significant statement of the 'freedom to farm.' " Neil D. Hamilton, *Freedom to Farm! Understanding the Agricultural Exemption to County Zoning in Iowa*, 31 Drake L. Rev. 565, 574 (1982) [hereinafter Hamilton]. One commentator has suggested the agricultural exemption "was a political trade-off obtained by farm leaders before passage of county zoning was possible," because county zoning was "relatively new and untested" in 1947. *Id.* at 573–74. That lead to fear of the impact local zoning regulations would have on farming.

In 1963, the general assembly amended the relevant part of the statute by changing the clause, "which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood, while so used," to the present version.  1963 Iowa Acts ch. 218, § 2.  Unchanged since the amendment, the relevant provision now reads:

> Except to the extent required to implement section 335.27, no ordinance adopted under this chapter applies to land, farm houses, farm barns, farm outbuildings or other buildings or structures which are *primarily adapted, by reason of nature and area, for use for agricultural purposes*, while so used.

Iowa Code § 335.2 (emphasis added).  Thus, the general assembly made two significant changes.  First, it deleted the requirement that the landowner use the land "as a primary means of livelihood."  Second, it added "primarily" as a modifier.

House File 194, from which the amendment originated, makes no mention of the reasoning behind the amendment.[8]  However, according to former state Senator Seeley G. Lodwick, who had sponsored a similar amendment in the senate, the amendment originated because there did not appear to be a clear relationship between the sources of income of

---

[8]The amendment of section 335.2 accompanied the amendment of a statute permitting any county with a population of more than thirty thousand people to adopt a building code, but exempting "farm houses or other farm buildings which are primarily adapted by reason of nature and area, for agricultural purposes."  *See* 1963 Iowa Acts ch. 218, § 1.  The accompanying house file reveals that the original language of the section permitting counties to adopt their own building codes originally exempted "farm houses, or other farm buildings which are adapted, by reason of nature and area, for use for agricultural purposes as a primary means of livelihood."  H.F. 194, 60th G.A., Reg. Sess. *available at* http://contentdm.legis.state.ia.us/cdm4/search.php (1963).  House File 194, however, was amended prior to its adoption to remove the language pertaining to "a primary means of livelihood" from the section pertaining to building codes and section 335.2.  *See id.*  The explanation of House File 194 states the purpose behind the section pertaining to county building codes but is silent as to the removal of the "primary means of livelihood" language.  *See id.*

the applicants for the exemption and the goals of zoning. *Ill Blows the Wind*, 57 Iowa L. Rev. at 496 & n.264 (citing a telephone interview with Senator Lodwick). Consequently, the general assembly removed the more important part of the test—the section calling for an income analysis—and modified the remainder by requiring the land or structures to be *primarily* adapted for agricultural purposes. *Id.* at 496.

According to one scholar, "[t]he effect of the amendment was to make the exemption available to smaller agricultural enterprises that might not have met a primary means of livelihood test, thereby broadening the exemption." Hamilton, 31 Drake L. Rev. at 567; *see also Ill Blows the Wind*, 57 Iowa L. Rev. at 497 (explaining that "subsequent to the 1963 amendment, farm land and structures owned by corporations or individuals deriving most of their income from sources other than the land and structures in question, could be exempted from zoning"). This explanation is consistent with the original intent of the statute, because it interprets the amendment as expanding the "freedom to farm."

Accordingly, following the 1963 amendment, the plain language of section 335.2 makes it clear that an applicant for an agricultural exemption must satisfy two conditions in order to receive the exemption. First, the applicant must demonstrate that the "land, farm houses, farm barns, farm outbuildings or other buildings or structures" are "primarily adapted" for the asserted purpose. An applicant can demonstrate the asserted purpose is so adapted based on the land's "nature" and "area." As one commentator points out, the definition of an asserted purpose could include agriculture, but nonetheless, the use could fail to be primarily adapted for that agricultural purpose by its nature and area. *See Ill Blows the Wind*, 57 Iowa L. Rev. at 497. Second, even if the land or structures are primarily adapted for their asserted purpose, that

purpose must be an agricultural one. We previously determined agriculture "is the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock."[9] *Thompson v. Hancock County*, 539 N.W.2d 181, 183 (Iowa 1995). We have also interpreted the phrase, "for use for agricultural purposes," to refer "to the functional aspects of buildings and other structures, existing or proposed." *Kuehl v. Cass County*, 555 N.W.2d 686, 688 (Iowa 1996).

**I. Substantial Evidence Analysis.**

**A. Generally.** When determining if substantial evidence exists to support the Board's findings, we view the evidence in the light most favorable to the judgment when a party challenges a ruling for lack of substantial evidence. *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004). When reasonable minds can accept the evidence as adequate to reach a conclusion, we will find such evidence is substantial. *Meincke v. Nw. Bank & Trust Co.*, 756 N.W.2d 223, 227 (Iowa 2008). If the reasonableness of the Board's action is " 'open to a fair difference of opinion, the court may not substitute its decision for that of the board.' " *Cyclone Sand & Gravel Co. v. Zoning Bd. of Adjustment*, 351 N.W.2d 778, 783 (Iowa 1984) (citation omitted). However, on appeal, the Board's

---

[9]As a side note, we have never imposed a requirement that agricultural activities be for-profit, which seems to be something the Board and zoning administrator were concerned with. Many of the old cases seem to presume that agricultural activities be for profit, but section 335.2 does not require it. Although section 335.2 is entitled "Farms exempt," it does not define what a "farm" is for the purposes of the statute. When a statutory term is undefined, we give it its common meaning. A "farm" may be defined as "a tract of land devoted to agricultural purposes," "a plot of land devoted to the raising of animals and esp. domestic livestock," or "a tract of water reserved for the artificial cultivation of some aquatic life form." *Merriam-Webster's Collegiate Dictionary* 454 (11th ed. 2003). Similarly, a "farmer" may be defined as "a person who cultivates land or crops or raises animals . . . or fish." *Id.* These definitions do not contain any reference to the derivation of income as a result of the activities or a requirement that the items grown or animals raised be given to any third party. Accordingly, a farm might simply be a tract of land containing crops or animals maintained solely for the use, enjoyment, or consumption of the landowner.

application and conclusions of law are not binding upon us. *See Raper*, 688 N.W.2d at 36.

When the relevant evidence is both uncontradicted and reasonable minds could not draw different inferences from the evidence, the reviewing court can determine the facts as a matter of law. *Armstrong v. State of Iowa Bldgs. & Grounds*, 382 N.W.2d 161, 165 (Iowa 1986). "As a matter of law" means "no other factual finding could be reasonably drawn from the evidentiary facts." *Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 888 (Iowa 1976) (citation and internal quotation marks omitted). If we find the record made before the Board establishes the facts as a matter of law, it is unnecessary for us to remand the case to the Board for additional fact finding. *See U.S. Cellular Corp. v. Bd. of Adjustment*, 589 N.W.2d 712, 721 (Iowa 1999) (declining to remand to the Board when there is no allegation the record contains a specific factual error); *Sahu v. Iowa Bd. of Med. Exam'rs*, 537 N.W.2d 674, 677–78 (Iowa 1995) (recognizing we are bound by the Board's factual findings " 'unless a contrary result is demanded as a matter of law' " (citation omitted)); *Armstrong*, 382 N.W.2d at 165 (finding "a remand for agency fact-finding is unnecessary when the facts are established as a matter of law").

**B.  The 6.52-acre Parcel.**  The zoning administrator found the 6.52-acre parcel did not qualify for the agricultural exemption, because when the Langs transferred this property, the Langs reduced the parcel to a roughly six-acre tract containing a pond and some berries.  The uncontroverted facts were that the zoning administrator recognized the agricultural exemption for the prior 43.3-acre parcel was for the same use.  Thus, if the transferred parcel had still exceeded thirty-five acres,

the county's zoning ordinance would presume the property to be a farm. In other words, the basis for the denial was the size of the parcel.

We observe the review procedure in the Iowa Code: "The concurring vote of three members of the board in the case of a five-member board . . . shall be necessary to *reverse* any order, requirement, decision, or determination of any such *administrative official* . . . ." Iowa Code § 414.14 (emphasis added). The Board voted two-to-two on Lang's appeal. Thus, under the statute, the Board did not overturn the zoning administrator's decision with the required three-vote majority. Therefore, the zoning administrator's decision is the reason the Langs did not receive the agricultural exemption on the 6.52-acre parcel.

The Langs argue the zoning administrator improperly interpreted section 335.2 and applied a minimum-acreage test in denying the exemption for the 6.52-acre parcel. No part of the statutory language of section 335.2 or its predecessor has ever referred to a minimum-acreage test in the sense that a tract of land must be a certain size in order to qualify for the agricultural exemption. *See* Op. Iowa Att'y Gen. No. 97–1–1(L) (Jan. 17, 1997), 1997 WL 994719, at *7 (concluding a county may not utilize an objective minimum-acreage test to determine whether land is exempt under section 335.2, but admitting that the size of the farm may be a relevant factor); 1954 Op. Iowa Att'y Gen. 96, 96 (concluding qualification for the agricultural exemption "is determined by the facts as to whether the land is used for agricultural purposes as a primary means of livelihood and not by the area of land with certain boundaries designated as a farm"); *see also County of Lake v. Cushman*, 353 N.E.2d 399, 401 (Ill. App. Ct. 1976) (concluding the Illinois legislature intended its agricultural exemption to be based on the use of the land, not the size of the land); Hamilton, 31 Drake L. Rev. at 575 (arguing *Cushman* more

adequately carried out the intent of the exemption than our decision in *Farmegg Prods., Inc. v. Humboldt County*, 190 N.W.2d 454, 459 (Iowa 1971) (rejecting a claim that a proposed facility for raising chicks was entitled to the farm exemption, because it would be "organized and carried on as an independent productive activity and not as part of an agricultural function"), *disapproved by Kuehl*, 555 N.W.2d at 689.

By applying a minimum-acreage test, the zoning administrator incorrectly interpreted section 335.2. The uncontroverted facts show that if the parcel was greater than thirty-five acres and used by the Langs for the same purpose as the 6.52-acre parcel, the agricultural exemption provided by section 335.2 would apply. As the Board found, the Langs are farmers growing trees, berries, asparagus, grapes, tomatoes, and fish.[10] The government enrolled the Langs in programs supporting these agricultural purposes. The United States Department of Agriculture considered the property to be farm ground for federal farm programs. Additionally, the government enrolled the pond in a farm fish program, and the state forester approved a stewardship plan under which the Langs planted more than five thousand trees on the property. The county treasurer, county assessor, Iowa Department of Agriculture, Iowa Department of Natural Resources, Iowa Department of Revenue, and United States Farm Services Agency provided other farm approvals.

---

[10]The Board also recognized the property contained the following crops for commercial production:

1. Trees, 4 to 5 acres, 80% for commercial production.
2. Raspberries, 0.1 acres, 10% for commercial production.
3. Blackberries, 0.1 acres, 10% for commercial production.
4. Asparagus, apples, 1 acre, 75% for commercial production.
5. Grapes, tomatoes, 0.2 acres, 15% for commercial production.

Therefore, as a matter of law, I would find the 6.52-acre parcel qualifies for the agricultural exemption. There is no need for us to remand the case to the Board for further findings of fact.

**C. House #3.** The zoning administrator denied the exemption for house #3 for the reason that one of the previous tenants, who the zoning administrator recognized as a farmhand, spent less than half his time on agricultural duties and therefore, was not primarily engaged in agriculture. The Board voted to uphold the zoning administrator's denial of the exemption. The basis for the Board's decision was the same as the zoning administrator's—the tenant did not spend enough time doing farm work; therefore, he was not primarily engaged in agriculture.

A "primarily engaged in agriculture" test seems to imply the occupants of the house either spend all of their time carrying out agricultural activities or engage in the agricultural activities as their primary source of income. As the legislative history reveals, the general assembly removed the latter implication from the statute in 1963, *see* 1963 Iowa Acts ch. 218, § 2, and the former implication would be contrary to the legislative intent behind section 335.2.

Applying the statute as we construe it in this opinion, the Langs must demonstrate the "land, farm houses, farm barns, farm outbuildings, or other buildings or structures" are "primarily adapted" for the asserted purpose. Iowa Code § 335.2. Second, even if the Langs can show house #3 is "primarily adapted" for its asserted purpose, that purpose must be an agricultural one. *Id.* An agricultural purpose involves the art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock.

Thus, the proper inquiry is whether the farmhouse is "primarily adapted, by reason of nature and area, for use for agricultural purposes."

*Id.* The Iowa Attorney General has confronted this issue before and determined the proper inquiry is whether the occupants of the house are "engaged in agriculture on the land where the houses are located." Op. Iowa Att'y Gen. No. 97–1–1, at \*5. The Board recognized this as the appropriate test. I agree with the conclusion of the Board and the attorney general.

The county gave permission to the Langs to build house #3 so the person or persons residing there could help with the farm chores. The Langs built the house for that very purpose. Thus, the record establishes, as a matter of law, that the Langs built the house to be primarily adapted for agricultural purposes. The only issue is whether the occupants of the house are primarily engaged in agriculture.

The Code does not require a person who engages in agriculture on a piece of property to do so full time to qualify for the agricultural exemption. If that were the case, the Code would not apply the exemption to a person who farms a piece of property, but has another job as his or her primary source of income.

The uncontroverted evidence shows the asserted purpose for house #3 is to provide a residence for someone helping to farm the property. Prior to this proceeding, the county recognized the prior tenant of the house was complying with the statute by engaging in agriculture on the land for forty-four percent of a normal workweek.[11] The

---

[11]The previous lease agreement required the former tenants to contribute at least 24.5 hours per week to the agricultural operation. Although the previous tenants' work log did not specifically allocate hours spent working on the agricultural operation to specific tasks, the Board allocated the hours as follows based on the work log's descriptions:

1. Case the tree farm: 313.5 hours (20%).
2. Special projects help: 505.5 hours (31%).
3. Take care of sheep: 87 hours (5%).
4. Assist in the management of fish production: 206.5 hours (13%).

uncontroverted evidence further shows the Langs' lease requires the current tenants of house #3 to engage in agriculture on the land where the house is located—just like the prior tenants. The only difference is that the prior tenants did not have an outside source of income, while the prospective tenants may have such separate income. Although the prospective tenants may have another source of income or employment, their lease nonetheless requires them to engage in the agricultural operation of the land. The evidence shows this involvement is 17.7 hours per week, or forty-four percent of an average workweek. As a matter of law, I would find this level of activity satisfies section 335.2's requirement that the prospective tenants engage in agriculture on the land where the house is located.

In summary, this is another instance where the government improperly intrudes on the use of an individual's property. The 6.52-acre parcel contained between four and five acres of nontraditional crops that the zoning authorities did not deem as agricultural, despite the fact the Iowa Department of Agriculture and the United States Department of Agriculture recognized the parcel as qualifying for agricultural programs. Had the Langs planted this acreage in corn or soybeans, there is no doubt in my mind the zoning authorities would allow the agricultural exemption. Furthermore, the undisputed evidence shows the time spent by the occupant of house #3 tending the nontraditional crops totals approximately forty percent of a normal workweek. Under the prior district court ruling, this was sufficient time for the house to qualify for the exemption. By finding substantial evidence supports the zoning authorities' decision, the majority is empowering these authorities to

_____

5. Other (tasks that could not be clearly assigned to any of the above categories): 497.5 hours (31%).

deny the Langs the lawful use of their land and receive the benefits therefrom, including the agricultural exemption.  Accordingly, I would reverse the decision of the district court affirming the Board's denial.